UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2010 OCT 27  PM 2: 34

CLERK

BY_____ _KAC_
DEPUTY CLERK

---

THE VLADIMIR GUSINSKY
REVOCABLE TRUST, On Behalf of Itself
and All Others Similarly Situated,

Plaintiff,

v.

ROCK OF AGES CORPORATION, JAMES
L. FOX, RICHARD C. KIMBALL,
DONALD M. LABONTE, PAMELA G.
SHEIFFER, KURT M. SWENSON,
FREDERICK E. WEBSTER, JR.,
SWENSON GRANITE COMPANY, LLC,
and GRANITE ACQUISITION, LLC,

Defendants.

Civil Action No. 5: 10-CV-262

**JURY TRIAL DEMANDED**

---

## CLASS ACTION COMPLAINT

Plaintiff, The Vladimir Gusinsky Revocable Trust, by its undersigned attorneys, for its class action complaint against defendants, alleges upon personal knowledge with respect to itself, and upon information and belief based, *inter alia*, upon the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this shareholder class action on behalf of itself and all other public shareholders of Rock of Ages Corporation ("ROA" or the "Company"), against the Company and its Board of Directors (the "Board" or the "Individual Defendants"), to enjoin a proposed transaction announced on October 18, 2010 (the "Proposed Transaction" or "Merger"), pursuant to which ROA will be acquired by

Swenson Granite Company, LLC, a private company, and its wholly owned subsidiary, Granite Acquisition, LLC (collectively, "Swenson Granite"). On October 18, 2010, the Board caused ROA to enter into an agreement and plan of merger (the "Merger Agreement") to be acquired by Swenson Granite in a transaction whereby the Company's public shareholders will receive $5.25 per share in cash and Swenson Granite will acquire all of the Company's outstanding shares.

2.     The Proposed Transaction is particularly troubling because two of the Individual Defendants who are major Company shareholders have entered into a contribution agreement (the "Contribution Agreement") and a Company stockholder voting agreement (the "Voting Agreement"). These Individual Defendants, Kurt Swenson and Richard Kimball, will receive compensation for their ROA shares that is different from what the Company's public shareholders will receive, namely Swenson Granite shares instead of cash. A third Individual Defendant, Donald Labonte, will be given the opportunity to purchase Swenson Granite shares, a benefit not accorded to the Company's public shareholders. A fourth individual, Charles M. Waite ("Waite"), who retired from ROA's Board on August 12, 2010, also is a major ROA shareholder who entered into the Contribution Agreement and the Voting Agreement and will receive Swenson Granite shares instead of cash for his shares.

3.     In approving the Proposed Transaction, the Individual Defendants breached their fiduciary duties of loyalty to ROA's shareholders by, *inter alia:* (i) agreeing to sell ROA without first taking steps to ensure that plaintiff and the Class members (defined below) will obtain adequate, fair, and maximum consideration under

the circumstances; and (ii) engineering the Proposed Transaction to benefit themselves and/or Swenson Granite without regard for plaintiff and the Class. As alleged herein, ROA and Swenson Granite aided and abetted the Individual Defendants' breaches of fiduciary duty. Accordingly, this action seeks to enjoin the Proposed Transaction and compel the Individual Defendants to exercise properly their fiduciary duties to ROA's public shareholders or, alternatively, to rescind the Proposed Transaction in the event defendants are able to consummate it.

## THE PARTIES

4.      Plaintiff, The Vladimir Gusinsky Revocable Trust, is and has been continuously throughout all times relevant hereto, the owner of ROA common stock. Plaintiff is a citizen of Illinois.

5.      Rock of Ages Corporation is a Vermont corporation that maintains its principal executive offices at 560 Graniteville Road, Graniteville, VT 05654. ROA is an integrated granite quarrier and manufacturer whose principal product is granite memorials primarily used in cemeteries. The Company markets its products in North America and operates active quarry properties and sawing facilities. The Company's common shares trade on the NASDAQ under the symbol "ROAC." As of August 13, 2010, there were 4,812,342 outstanding shares of Class A Common Stock and 2,603,721 outstanding shares of Class B Common Stock.

6.      Defendant James L. Fox ("Fox") has served as a director of the Company since October 1997. According to the Company's Annual Proxy Statement filed with the Securities and Exchange Commission (the "SEC") on July 9, 2010 (the "2010 Proxy"),

Fox is the chair of the Company's Audit Committee and serves on the Compensation Committee. Upon information and belief, Fox is a citizen of Massachusetts.

7.    Defendant Richard C. Kimball ("Kimball") has served as a director of ROA since 1986, and has been Vice Chairman since 1993. From 1993 to January 2001, he was Chief Operating Officer-Memorials Division, and was Chief Strategic and Marketing Officer from January 2001 to December 2004. According to the 2010 Proxy, Kimball serves on ROA's Audit and Corporate Governance and Nominating Committees. Kimball owns 72,126 shares, 1.5% of the Company's Class A common stock, and 29,126 shares, or 1.1% of the Company's Class B common stock. Upon information and belief, Kimball is a citizen of New Hampshire.

8.    Defendant Donald M. Labonte ("Labonte") has served as a director of the Company since 2008. According to the 2010 Proxy, Labonte has also been the President and Chief Executive Officer ("CEO") of ROA since July 2008, and is the former Chief Operating Officer, having held that position from February 2008 until July 2008. He was President and Chief Operating Officer/Quarry Division from December 2007 to February 2008, and President and Chief Operating Officer/Manufacturing Division from August 2002 to February 2008. Labonte has been President of Rock of Ages Canada, Inc., a wholly owned subsidiary of the Company, since 1999. From January 2002 to July 2002, he was Vice President of the Manufacturing Division of the Company. From 1998 to 1999, he was Vice President/General Manager of Rock of Ages Canada, Inc. From 1993 to 1998, Labonte was Director of Operations of Rock of Ages Canada, Inc. From 1980 to 1993, Labonte held various positions in the manufacturing plant at Rock of Ages Canada,

Inc. Upon information and belief, Labonte is a citizen of Canada.

9.     Defendant Pamela G. Sheiffer ("Sheiffer") has served as director of ROA since June 2004.   According to the 2010 Proxy, Sheiffer is currently chair of the Company's Compensation Committee and is a member of the Corporate Governance and Nominating Committee. Upon information and belief, Sheiffer is a citizen of New York.

10.     Defendant Kurt M. Swenson ("K. Swenson") has been Chairman of the Board of Directors of the Company since 1984. From 1984 to June 30, 2008 he was President and CEO of the Company.   According to the 2010 Proxy, prior to the Company's initial public offering in 1997, K. Swenson had been the CEO and a director of Swenson Granite Company, Inc. from 1974 to September of 1997.   He is also currently non-executive Chairman of the Board of Swenson Granite. K. Swenson owns 1,135,000 shares, or 19.5%, of the Company's Class A common stock, and 1,005,000 shares, or 38.6%, of the Company's Class B common stock.   His brother, Kevin C. Swenson, Vice President of Swenson Granite, owns 1,023,489 shares, or 17.5%, of the Company's Class A common stock, and the same number of shares of Class B common stock, or 39.3% of the class.   Upon information and belief, K. Swenson is a citizen of New Hampshire.

11.     Defendant Frederick E. Webster, Jr. ("Webster") has served as a director of the Company since October 1997. According to the 2010 Proxy, Webster is currently the chair of ROA's Compensation Committee and also serves on the Audit and Corporate Governance and Nominating Committees.   Upon information and belief, Webster is a citizen of Arizona.

12. The defendants identified in ¶¶ 6-11 are collectively referred to herein as the "Individual Defendants."

13. Defendant Swenson Granite Company, LLC is a Delaware limited liability company. According to the 2010 Proxy, Swenson Granite is "engaged in the granite curb and landscaping business" and "could be considered" or "may be deemed an affiliate of the Company."

14. Defendant Granite Acquisition, LLC is a Delaware limited liability corporation and a wholly-owned subsidiary of Swenson Granite.

15. By reason of their positions as officers and/or directors of the Company, the Individual Defendants are in a fiduciary relationship with plaintiff and the other public shareholders of ROA, and owe plaintiff and ROA's other shareholders the highest obligations of loyalty, good faith, fair dealing, due care, and full and fair disclosure.

16. Each of the Individual Defendants at all relevant times had the power to control and direct ROA to engage in the misconduct alleged herein. The Individual Defendants' fiduciary obligations required them to act in the best interest of plaintiff and all ROA shareholders.

17. Each of the Individual Defendants owes fiduciary duties of due care, loyalty, and disclosure to plaintiff and the other members of the Class, and each are acting in concert with one another in violating their fiduciary duties as alleged herein, and, specifically, in connection with the Proposed Transaction.

## JURISDICTION AND VENUE

18. This Court has jurisdiction over the subject matter of this action

pursuant to 28 U.S.C. §§ 1332(a), (c), and (d) as plaintiff is a citizen of a State different from any defendant and the amount in controversy exceeds $5,000,000, exclusive of interests and costs. The Proposed Transaction is valued at approximately $38.9 million in cash. This action is not a collusive one to confer jurisdiction on this Court.

19.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) and (c). ROA is incorporated in and has its principal place of business located in this district. Many of the acts giving rise to the violations complained of herein occurred in this district.

## CLASS ACTION ALLEGATIONS

20.     Plaintiff brings this action on its own behalf and as a class action on behalf of itself and all other public shareholders of ROA (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

21.     This action is properly maintainable as a class action.

22.     The Class is so numerous that joinder of all members is impracticable. As of August 13, 2010, there were 4,812,342 outstanding shares of Class A Common Stock and 2,603,721 outstanding shares of Class B Common Stock, held by scores, if not hundreds or thousands, of individuals and entities scattered throughout the country.

23.     Questions of law and fact are common to the Class, including, among others:

a.     Whether defendants have breached their fiduciary duties owed to plaintiff and the Class; and

      b.     Whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

     24.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

     25.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for defendants, or adjudications with respect to individual members of the Class that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

     26.     Defendants have acted, or refused to act, on grounds generally applicable, and causing injury to the Class and, therefore, final injunctive relief on behalf of the Class as a whole is appropriate.

## SUBSTANTIVE ALLEGATIONS

     27.     On March 16, 2010, the Company issued a press release announcing its financial results for 4Q09 and all of 2009. According to the press release, the results were "highlighted by a return to profitability for the quarter and year versus losses for the prior year periods, an increase in cash generated from operations to approximately $10,800,000 for 2009 compared to about $2,300,000 for 2008, and the reduction of total

debt by an additional $7,500,000 in 2009 following the $8,000,000 debt reduction achieved in 2008." For 4Q09, net income "was $609,000, or $0.08 per diluted share, on revenue of $12,279,000. This compares to a net loss for the fourth quarter of 2008 of $2,677,000, or $0.36 per diluted share, on revenue of $16,560,000. Results for the fourth quarter of 2008 included a $3,930,000 charge for the write-off of second-grade granite block inventory and a $1,348,000 write-down of the Company's former headquarters building."

28.    Individual Defendant Labonte stated in the press release:

Contrary to our expectations last November, the quarry yield issues that bedeviled us in the third quarter continued to be a problem in the fourth quarter. The decrease in fourth quarter revenue was a direct result of the poor recovery in our export quarries. Demand for our stone remains extremely high in our key export markets; we simply did not have enough of the desired inventory to satisfy it. We are taking steps to rectify this situation. During the fourth quarter we launched a development program in new areas in our Barre, Bethel and White Gardenia quarries in order to increase production and decrease unit costs beginning in 2010.

Also encouraging was the improved performance of our manufacturing segment in the fourth quarter of 2009. Revenue was flat with the prior year level, following negative revenue comparisons in each of the first three quarters, and operating income increased 15%, reflecting improved fourth quarter sales from our authorized dealers and of mausoleums.

We are optimistic that we can grow both our quarry and manufacturing segments in 2010, even as we maintain our tight control over operating costs and continue deleveraging our balance sheet.

29.    On May 7, 2010, the Company announced it had received an unsolicited proposal from Swenson Granite to purchase all of its outstanding shares of common stock for $4.38 in cash. According to the announcement, Individual Defendant K. Swenson, ROA's non-executive Chairman, along with his brother, Kevin Swenson, Vice President

of Swenson Granite, and Robert Pope ("Pope"), President and CEO of Swenson Granite, "own approximately 74% of Swenson [Granite] and approximately 29% of all outstanding shares of common stock of Rock of Ages, and control approximately 70% of the voting power of all outstanding capital stock of Rock of Ages."  As part of the unsolicited proposed transaction, they "would exchange all of their 2,173,364 Class B shares of Rock of Ages for additional interests in Swenson [Granite]."

30.    The announcement stated that ROA formed a committee of independent directors that would "retain financial advisors and legal counsel, evaluate the proposal from Swenson [Granite] and determine how to proceed in the best interests of Rock of Ages' shareholders."  It said that no decision had been made by ROA as to whether to accept the proposal.

31.    The announcement added that "[t]he acquisition proposal also states that Swenson [Granite] seeks to structure the transaction so that the value of Rock of Ages' assets can be 'stepped up' to fair market value to the extent possible under the Internal Revenue Code.  There can be no assurance as to whether such a step-up can be achieved.  Accordingly, Rock of Ages' Board of Directors cautions investors that an inability to achieve such a step-up could result in a reduction of Swenson [Granite]'s proposed $4.38 per share price."

32.    The announcement included as an attachment a letter to the Board from Individual Defendant K. Swenson and Pope dated May 6, 2010 (the "Swenson Letter").  The Swenson Letter stated, among other things, that:

> We believe that the proposed transaction represents an attractive
> alternative for ROA and its shareholders. Our per share price reflects a

10

substantial premium over the current trading price of the company's stock and provides a means for shareholders to gain liquidity for large blocks of stock in a short time horizon, something that the public trading market is unlikely to provide, We believe that federal capital gain tax rates are likely to rise in the short- or medium-term future and that an early transaction might allow shareholders to take advantage of the current rates. *We also believe that ROA is currently not well-positioned to create value for its shareholders as a pubic [sic] company, given the company's current business plan, current analyst and trading practices, and the increasing cost of compliance with disclosure, accounting and other public company obligations.*

*            *            *

*As you know, we have considerable familiarity with the operations, assets, liabilities and employees of ROA,* which we believe will enable us to expedite the due diligence process. We envision making relatively minimal changes to the operations and employees of ROA following the closing of the proposed transaction. We intend to offer [Individual Defendant] Donald Labonte the opportunity to buy shares of Swenson Granite. . . .

While [Individual Defendant] Dick Kimball and [then-Current Director] Chuck Waite are small shareholders of Swenson Granite with each owning less than 1% of the outstanding shares and neither has served as a director of Swenson Granite for over a decade, we understand that they may be considered part of the prospective acquiring group. . . .

(Emphasis added).

     33.    The announcement and the Swenson Letter were contained in a Form 8-K filed with the SEC on May 10, 2010.

     34.    ROA's common stock, which closed at $3.38 per share on May 7, jumped $0.74 to close at $4.12 on May 10, 2010, the next trading day, virtually eliminating any premium contemplated by the unsolicited proposal.

     35.    On May 11, 2010, the Company issued a press release entitled "Rock of Ages Reports 26% Increase in Revenue and Smaller Net Loss For the First Quarter of

2010." The press release stated the Company's "net loss for the first quarter of 2010 narrowed to $2,092,000, or $.28 per share, compared to a net loss of $2,774,000, or $.37 per share, for the first quarter of 2009. Revenue increased 26% to $7,511,000 from $5,938,000 for the first quarter of last year." Specifically, "[m]anufacturing revenue for the first quarter of 2010 was up 38% to $3,889,000 compared to $2,814,000 for the first quarter of 2009, as sales of monuments and industrial products both increased. The operating loss in the manufacturing segment decreased to $484,000 from $864,000 a year ago, reflecting the higher revenue and cost saving steps initiated last year . . . . Quarry revenue for the three months ended April 3, 2010 increased 16% to $3,622,000 compared to $3,124,000 for the first quarter of 2009, primarily the result of higher shipments from the Company's export quarries. The operating loss in the quarry segment increased to $944,000 compared to an operating loss of $772,000 last year . . . ." "Unallocated corporate overhead decreased 34% to $687,000 for the first quarter of 2010 versus $1,041,000 for the first quarter of 2009," and "[t]otal debt at April 3, 2010 was $16 million . . . compare[d] to total debt at April 4, 2009 of $19.3 million and $14.4 million at December 31, 2009."

36.     Individual Defendant Labonte was upbeat in his assessment of the results in the press release. "We have always reported a loss in the first quarter due to the seasonal nature of our business. This year's sharply reduced first quarter loss was primarily the result of the substantially improved performance of our manufacturing operations, as well as continued reductions in overhead costs," he said. "Based on current trends, we are optimistic regarding the performance of our manufacturing

operations for 2010 as a whole." He noted that "[d]emand for our export granite in particular remains strong, and we expect it to remain strong throughout the year. . . . The development program in our quarries we launched last year is on schedule, and we expect to produce and deliver increased quantities of saleable granite throughout the rest of the year." He expressed confidence that the Company's "unallocated corporate overhead for 2010 will be approximately 10% below 2009," and stated the Company was concentrating "on reducing our debt and [we] are in discussions with various lenders regarding options that may be available to us to reduce our interest costs."

37.    The encouraging results and comments in the May 11, 2010 press release contrast sharply with the dour statement in the Swenson Letter that the Company "is currently not well-positioned to create value for its shareholders."

38.    On May 19, 2010, a putative class action complaint alleging the Company's directors breached their fiduciary duties was filed on behalf of the Company's shareholders against ROA, its Board, and Swenson in Vermont Superior Court in and for Washington County. The lawsuit was premature in that no definite agreement had been reached between ROA and Swenson Granite. On June 25, 2010, the defendants in that action filed a Notice of Removal in the United States District Court for the District of Vermont. *Semon v. Rock of Ages Corp.*, C.A. No. 5:10-cv-00143-CR (D. Vt.). Plaintiff's motion to remand and defendants' motion to dismiss are pending.

39.    On May 20, 2010, the Company issued a press release in which it announced "that the Special Committee of its Board of Directors has determined to commence a process to explore and consider possible strategic alternatives for Rock of

Ages while it continues to consider the previously disclosed acquisition proposal."

     40.     On August 10, 2010, the Company issued a press release entitled "Rock of

Ages Reports 9% Increase in Second Quarter Net Income to $0.21 Per Share."  The press

release stated that

> [N]et income for the second quarter of 2010 increased 9% to $1,561,000,
> or $.21 per share, which included costs associated with the exploration of
> strategic options and shareholder lawsuit expenses of $493,000, or $0.07
> per share. For the second quarter of 2009, net income was $1,433,000, or
> $.19 per share. Revenue for this year's second quarter increased 2% to
> $14,663,000 compared to $14,424,000 for the second quarter of 2009.
>
> Divisional operating income increased 26% to $3,200,000 compared to
> $2,536,000 last year, and unallocated corporate overhead decreased to
> $669,000 from $692,000.
>
> Manufacturing revenue for the second quarter of 2010 increased 7% to
> $8,025,000 compared to $7,512,000 for the second quarter of 2009, as
> sales of monuments and industrial products both increased. Operating
> income in the manufacturing segment increased to $1,562,000 from
> $1,373,000 a year ago, reflecting the higher revenue and cost reduction
> steps initiated last year.
>
> Quarry revenue for the second quarter of 2010 decreased 4% to
> $6,638,000 compared to $6,912,000 for the second quarter of 2009, but
> operating income increased 41% to $1,638,000 compared to $1,163,000
> last year, reflecting lower operating expenses and higher productivity due
> to the development and production improvements undertaken in the past
> year.
>
> For the six months ended July 3, 2010, revenue increased 9% to
> $22,174,000 from $20,362,000 for the first six months of 2009. Gross
> profit increased 21%, SG&A was down slightly, and divisional income
> increased 97% compared to the first half of 2009.
>
> The net loss for the first half of 2010 was $531,000, or $0.07 per share,
> which included costs associated with the exploration of strategic options
> and shareholder lawsuit expenses of $493,000, or $0.07 per share. For the
> first six months of 2009, the net loss was $1,341,000, or $0.18 per share.

     41.     Individual Defendant Labonte commented in the press release that "[w]e

remain confident regarding the performance of our manufacturing operations for 2010 as a whole." He added that "[o]ur quarry development programs have increased our ability to produce and deliver higher quantities of saleable granite. Demand for our granites remains strong, so we are optimistic about quarry performance going forward."

42.     The Company formally reported its 2Q10 financial results in a Form 10-Q filed with the SEC on August 17, 2010.

43.     On October 18, 2010, the Company issued a press release wherein it announced that it had entered into the Proposed Transaction. According to the press release, ROA shareholders will receive $5.25 cash per share, and Swenson Granite will acquire all of ROA's outstanding shares. It stated that the Company's Board, based in part on the unanimous recommendation of the Special Committee, unanimously adopted and recommended that the Company's shareholders approve the Proposed Transaction.

44.     According to the press release, "The special committee's independent financial advisor has delivered an opinion to the effect that the $5.25 per share to be received by Rock of Ages shareholders in the merger is fair, from a financial point of view, to such shareholders. The $5.25 per share price represents a 57% premium to the average closing price of Rock of Ages Class A common stock for the 30 days prior to the May 7, 2010 announcement of Swenson Granite's initial proposal to acquire 100% ownership of Rock of Ages, and a 84% premium to the average closing price for the 12 months prior to the May 7, 2010 announcement."

45.     The press release also said that "[c]onsummation of the merger is conditioned upon, in addition to approval of the merger agreement by the majority vote of Rock of Ages' Class A and Class B common stock, voting together, approval by a majority of the outstanding shares of Class A common stock, excluding shares held by members of Swenson Granite." It

noted that Individual Defendant K. Swenson, his brother Kevin Swenson, and Pope, own approximately 71% of Swenson Granite and that they, "along with certain other members of Swenson Granite," based upon the Swenson Letter and the Voting Agreement discussed below, including Individual Defendant Kimball and former Director Waite, "who are also Rock of Ages shareholders," and who together have approximately 81% of the voting power of ROA, have agreed to vote their shares in favor of the Proposed Transaction. Thus, approval by a majority vote of ROA's Class A and Class B common stock, voting together, is assured.

46.    On October 19, 2010, North Star Investment Management Corp., which controls 739,551 voting shares of ROA Class A common stock, filed a Schedule 13D with the SEC wherein it announced its intention to vote in favor of the Proposed Transaction. Thus, approval by a majority of ROA's Class A shareholders, excluding shares held by members of Swenson Granite, also is virtually assured.

47.    In addition, according to the October 18, 2010 press release, "Prior to the merger, [Individual Defendant] Kurt Swenson, Kevin Swenson, Pope and certain other members of Swenson Granite who are also shareholders of Rock of Ages, [including Individual Defendant Kimball and former Director Waite], will contribute to Swenson Granite a total of 258,326 Class A shares and 2,449,793 Class B shares of Rock of Ages in exchange for additional shares of membership interest in Swenson Granite, and will not receive the $5.25 per share cash merger price for those Rock of Ages shares." Thus, Individual Defendant K. Swenson and, based upon the Swenson Letter and the Voting Agreement and Contribution Agreement discussed below, Individual Defendant Kimball and former Director Waite, will receive benefits from the Proposed Transaction not available to the Company's public shareholders because Swenson Granite is a private

company.  In addition, according to the Swenson Letter, Individual Defendant Labonte will have the opportunity to purchase Swenson Granite shares.

48.     Shares of ROA closed at $4.10 on October 15, 2010.  On October 18, 2010, the next trading day, they shot up by $1.04 to close at $5.14 per share.  They increased by an additional $0.06 to close at $5.20 on October 21, 2010.  Not only was the supposed premium offered by Swenson Granite almost entirely eliminated, but the market clearly demonstrated that ROA shares have more value than Swenson Granite is proposing to pay for them.

49.     The October 18, 2010 press release was included as an exhibit to a Form 8-K filed with the SEC the same day.  The Merger Agreement was also included as an exhibit to the 8-K.

50.     Despite its recent strong performance in the face of some of the worst economic conditions in nearly 70 years, the Individual Defendants have caused the Company to agree to the Merger Agreement to the detriment of its shareholders. The consideration to be paid to the plaintiff and the Class in the Proposed Transaction is unfair and grossly inadequate because, among other things, the intrinsic value of ROA is materially in excess of the amount offered in the Proposed Transaction, giving due consideration to the Company's anticipated operating results, net asset value, cash flow profitability, and established markets.  The $5.25 per share being offered by Swenson Granite represents almost no premium to the Company's public shareholders, because ROA's stock traded as high as $5.20 per share as recently as October 21, 2010.  Moreover, the Swenson Letter admitted that ROA had greater value as a private

company, which should cause Swenson Granite to pay a significantly higher premium. In addition, the Company's financial results for 4Q09, 2009, 1Q10, and 2Q10 demonstrate the claims in the Swenson Letter that "ROA is currently not well-positioned to create value for its shareholders as a pub[l]ic company" are unfounded; the Company's financial position is improving rapidly and it is poised to become profitable in the near future.

51.     The Proposed Transaction will deny Class members their right to share proportionately and equitably in the true value of the Company's business, as well as its future growth in profits and earnings, at a time when the Company is poised to increase its profitability.

52.     The October 18, 2010 press release and Form 8-K provide no evidence the Individual Defendants made any effort to solicit other buyers before agreeing to the Proposed Transaction.  In fact, the process that led to the Proposed Transaction shows that it was biased in favor of Swenson Granite and dominated by Individual Defendant K. Swenson, who stood on both sides of the Proposed Transaction.

53.     As noted above, Individual Defendants K. Swenson, Labonte, and Kimball, a majority of the six-person Board, and former Director Waite, who was on the seven-person Board when it received Swenson Granite's unsolicited proposal, will receive benefits from the Proposed Transaction not available to the Company's public shareholders in that they will receive additional Swenson Granite shares instead of $5.25 for their holdings in ROAC and/or the opportunity to purchase Swenson Granite shares. As of March 10, 2010, Individual Defendant K. Swenson owned 1,005,000 shares of

Class B common stock, 38.6% of the outstanding shares, and 1,135,000 shares of Class A common stock, 19.5% of the outstanding shares; Individual Defendant Labonte owned 35,000 shares of Class A common stock; Individual Defendant Kimball owned 29,126 shares of Class B common stock, 1.1% of the outstanding shares, and 72,126 shares of Class A common stock, 1.5% of the outstanding shares; and former Director Waite owned 29,126 shares of Class B common stock, 1.1% of the outstanding shares, and 45,000 shares of Class A common stock. These three Individual Defendants will receive *significant and material* benefits unavailable to the Company's public shareholders, and therefore had financial incentives to approve the Proposed Transaction to the detriment of said shareholders.

54.     Both the ROA press release and Form 8-K of October 18, 2010, stated that the Board unanimously approved the Proposed Transaction. In that the unanimous vote of the entire Board was in addition to the unanimous vote of the independent Special Committee, Individual Defendants K. Swenson, Kimball, and Labonte, a majority of the Board, all voted in favor of the Proposed Transaction despite having conflicting interests.

55.     On October 20, 2010, a Schedule 13D/A was filed with the SEC that described a Voting Agreement and Contribution Agreement involving special considerations for, among others, Individual Defendants K. Swenson and Kimball, and former Director Waite. Each has pledged to vote his shares in favor of the Proposed Transaction under the Voting Agreement and each will receive shares of Swenson Granite rather than cash as consideration under the Contribution Agreement.

56.     Any alternate buyer for the Company must contend with Swenson Granite,

which has the Board's undivided support, and a majority of the Board holding financial interests in Swenson Granite.

57.   As a result, the Individual Defendants have breached the fiduciary duties they owe to the Company's public shareholders because the shareholders will not receive adequate or fair value for their ROA shares in the Proposed Transaction.

58.   The Individual Defendants failed to fulfill their fiduciary duty to obtain the best price reasonably available for plaintiff and the Class.

59.   The Individual Defendants breached their fiduciary duty of loyalty by placing their own financial interests ahead of those of the Company's public shareholders.

60.   Moreover, to the detriment of the plaintiff and the Class, the terms of the Merger Agreement substantially favor Swenson Granite and are calculated to unreasonably dissuade potential suitors from making competing offers.

61.   For example, the Individual Defendants have agreed to a "No Solicitation" provision in Section 6.7 of the Merger Agreement that unfairly restricts the Board from soliciting alternative proposals and requires the Company to advise Swenson Granite about any competing offers.  Section 6.3(a) of the Merger Agreement states:

> (a) The Company will as promptly as reasonably practicable (and in any event within two Business Days after receipt by the Company Board or the Special Committee) notify [Swenson Granite] of the receipt of any Acquisition Proposal. The Company shall notify [Swenson Granite], in writing, of any decision of the Company Board or of the Special Committee or a majority of the (but not less than two) Qualified Directors (with respect to both this Agreement and such Acquisition Proposal) as to whether to consider any Acquisition Proposal or to enter into discussions or negotiations concerning any Acquisition Proposal or to provide material non-public information or data with respect to the Company to any Person,

which notice shall be given as promptly as reasonably practicable after such determination was reached (and in any event no later than two Business Days after such determination was reached). The Company will (i) provide [Swenson Granite] with written notice setting forth such information as is reasonably necessary to keep [Swenson Granite] reasonably informed in all material respects of the status and material terms of any such Acquisition Proposal and of any material amendments thereto and (ii) promptly (and in any event within two Business Days of such determination) notify [Swenson Granite] of any determination by the Company Board or of the Special Committee or a majority of the (but not less than two) Qualified Directors (with respect to both this Agreement and such Acquisition Proposal) that such Acquisition Proposal constitutes a Superior Proposal. The Company will provide to [Swenson Granite] copies of all non-public information which the Company shall provide to an entity or person or group thereof making an Acquisition Proposal.

62.    Section 6.7(b) of the Merger Agreement prohibits the Board from

accepting another acquisition proposal.  It states:

(b) Subject to Section 6.3(c) and Section 6.3(d), neither the Company Board nor any committee thereof shall, directly or indirectly, (i)(A) withdraw or modify in a manner adverse to [Swenson Granite] the Company Board Recommendation; (B) adopt or recommend any Acquisition Proposal; or (C) in the event of a tender offer or exchange offer for any outstanding Company Common Stock, fail to recommend against acceptance of such tender offer or exchange offer by the Company's shareholders within 10 Business Days of the commencement thereof (for the avoidance of doubt, the taking of no position or a neutral position by the Company Board or any committee thereof in respect of the acceptance of any tender offer or exchange offer by its shareholders shall constitute a failure to recommend against any such offer) (any action described in clauses (A)-(C) above being referred to as a "Change of Recommendation") or (ii) allow the Company to execute or enter into any merger agreement, acquisition agreement or other similar agreement with respect to any Acquisition Proposal (an "Acquisition Agreement").

63.    Section 6.7(c) contains a limited "fiduciary out" provision.  It provides

that:

(c) Notwithstanding the foregoing or anything else in this Agreement to the contrary, prior to the Shareholder Approvals, the Company may, if the Special Committee or a majority of the (but not less than two) Qualified

Directors (with respect to both this Agreement and such Acquisition Proposal), and the Company Board if required by applicable provisions of the Vermont Laws or the Company Bylaws, determines in good faith, after consultation with its outside counsel, that the failure to take such action would reasonably be expected to be inconsistent with the fiduciary duties of the Company's directors under applicable Law, (i) make a Change of Recommendation and/or (ii) in response to a Superior Proposal, cause the Company to terminate this Agreement to enter into an Acquisition Agreement that contemplates a Superior Proposal; provided, however, that the Company may not make a Change of Recommendation or terminate this Agreement pursuant to this Section 6.3(c) unless the Company shall have provided at least five Business Days' notice to [Swenson Granite] that the Company intends to take such action and specifying the reasons therefor, including, if the basis of the proposed action by the Company is a Superior Proposal, the material terms and conditions of such Superior Proposal (it being understood and agreed that any amendment to any material term of such Superior Proposal shall require a new notice and a new five Business Day period). In determining whether to make a Change of Recommendation or to cause the Company to so terminate this Agreement pursuant to the terms of this Section 6.3(c), the Special Committee or a majority of the (but not less than two) Qualified Directors (with respect to both this Agreement and such Acquisition Proposal), and the Company Board if required by applicable provisions of the Vermont Laws or the Company Bylaws, shall take into account any changes to the terms and conditions of this Agreement proposed by [Swenson Granite] to the Company in response to any such notice.

64.     The Merger Agreement also states in section 6.3(d) in relevant part that:

(d) Nothing contained in this Section 6.3 or elsewhere in this Agreement shall prohibit the Company, the Company Board, or the Special Committee or a majority of the (but not less than two) Qualified Directors (with respect to both this Agreement and such Acquisition Proposal) from taking and disclosing to the Company's shareholders a position with respect to a tender offer or exchange offer by a third party or from taking any action or making any disclosure required by applicable Law . . . .

65.     Further locking up control of the Company in favor of Swenson Granite are Sections 8.1(c)(ii) and 8.2(d) of the Merger Agreement, regarding termination expenses, which require the Company to pay Swenson Granite's out-of-pocket costs and expenses incurred in connection with the Merger Agreement and the transactions

contemplated thereby, including, without limitation, the fees and disbursements of Swenson Granite's counsel, financial advisors, accountants and bankers, if the Individual Defendants cause the Company to terminate the Merger Agreement pursuant to the lawful exercise of their fiduciary duties. The termination expenses provisions are unreasonable under the circumstances because such costs and expenses may be substantial and they are uncapped under the Merger Agreement.

66.   Any superior proposal will have to be well in excess of the amount of Swenson Granite's out-of-pocket costs and expenses to be considered by the Board. The Board's forfeiture of its ability to consider proposals that are merely somewhat more beneficial to the Company's shareholders is a breach of the Individual Defendants' duties to maximize shareholder value.

67.   The Proposed Transaction lacks any of the fundamental hallmarks of fairness. These acts, combined with other defensive measures the Company has in place, effectively preclude any other bidders who might be interested in paying more than Swenson Granite for the Company, and have the effect of limiting the ability of the Company's stockholders to obtain the best price for their shares.

## COUNT I

### (Breach of Fiduciary Duty against the Individual Defendants)

68.   Plaintiff repeats and re-alleges the preceding allegations as if fully set forth herein.

69.   As members of the Board, the Individual Defendants have fiduciary obligations to: (a) undertake an appropriate evaluation of ROA's net worth as a merger/acquisition candidate; (b) take all appropriate steps to enhance ROA's value and

attractiveness as a merger/acquisition candidate; (c) act independently to protect the interests of the Company's public shareholders; (d) adequately ensure that no conflicts of interest exist between the Individual Defendants' own interests and their fiduciary obligations, and, if such conflicts exist, to ensure that all conflicts are resolved in the best interests of ROA's public shareholders; (e) actively evaluate the Proposed Transaction and engage in a meaningful auction with third parties in an attempt to obtain the best value on any sale of ROA; and (f) disclose all material facts in connection with the solicitation of shareholder approval.

70.     The Individual Defendants have breached their fiduciary duties to plaintiff and the Class.

71.     As alleged herein, the Individual Defendants have initiated a process to sell ROA that undervalues the Company and vests some of them with benefits that are not shared equally by ROA's public shareholders.  In addition, by agreeing to the Proposed Transaction, the Individual Defendants have capped the price of ROA at a price that does not adequately reflect the Company's true value and are forcing plaintiff and the Class to sell their shares for reasons not related to the price offered.  Defendants also failed to sufficiently inform themselves of ROA's value, or disregarded the true value of the Company, and failed to achieve the best price reasonably available.  Furthermore, any alternate acquirer will be faced with engaging in discussions with a management team and Board that is committed to, and a Board the majority of which stands on both sides of, the Proposed Transaction.

72.     Unless the Individual Defendants' conduct is enjoined by the Court, they

will continue to breach their fiduciary duties to plaintiff and the members of the Class, and will further a process that inhibits the maximization of shareholder value.

73.     Plaintiff and the members of the Class have no adequate remedy at law.

## COUNT II

### (Aiding and Abetting the Board's Breaches of Fiduciary Duty against ROA and Swenson Granite)

74.     Plaintiff repeats and re-alleges the preceding allegations as if fully set forth herein.

75.     Defendants ROA and Swenson Granite (*i.e.,* Swenson Granite Company, LLC and Granite Acquisition, LLC) knowingly assisted the Individual Defendants' breaches of fiduciary duty in connection with the Proposed Transaction, which, without such aid, would not have occurred.   In connection with discussions regarding the Proposed Transaction, ROA provided, and Swenson Granite obtained, sensitive non-public information concerning ROA's operations and thus had unfair advantages which enabled Swenson Granite to acquire the Company at an unfair and inadequate price.

76.     Individual Defendant K. Swenson and Pope boasted of Swenson Granite's inside knowledge of ROA in the Swenson Letter, stating "[a]s you know, we have considerable familiarity with the operations, assets, liabilities and employees of ROA, which we believe will enable us to expedite the due diligence process."

77.     As a result of this conduct, plaintiff and the members of the Class have been and will be damaged in that they have been and will be prevented from obtaining a fair price for their ROA shares.

78.     Plaintiff and the members of the Class have no adequate remedy at law.

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.      Ordering that this action may be maintained as a class action and certifying plaintiff as the Class representative;

B.      Preliminarily and permanently enjoining defendants and all persons acting in concert with them, from proceeding with, consummating, or closing the Proposed Transaction;

C.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to plaintiff and the Class;

D.      Directing defendants to account to plaintiff and the Class for their damages sustained because of the wrongs complained of herein;

E.      Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

<u>**JURY TRIAL DEMAND**</u>

Plaintiff demands a trial by jury for those issues so triable.

Dated: October 27, 2010                          **POTTER STEWART, JR.**
                                                 **LAW OFFICES P.C.**


By:_____
     Potter Stewart, Jr.
     The Merchants Bank Building
     205 Main Street, Suite 8
     Brattleboro, VT  05301
     Tel.: (802) 257-7244

OF COUNSEL:

**RIGRODSKY & LONG, P.A.**
Seth D. Rigrodsky
Brian D. Long
919 N. Market Street, Suite 980
Wilmington, DE 19801
Tel.: (302) 295-5310
Fax: (302) 654-7530

**RYAN & MANISKAS, LLP**
Richard A. Maniskas
995 Old Eagle School Rd., Suite 311
Wayne, PA 19087
Tel.: (484) 588-5516
Fax: (484) 450-2582