U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

## UNITED STATES DISTRICT COURT
### DISTRICT OF VERMONT

2010 DEC -9 PM 1: 12

BY_____
DEPUTY CLERK

| | |
|---|---|
| TODD SEMON, on behalf of himself, and all others similarly situated, | |
| Plaintiff, | Case No. 5:10cv00143 - CR |
| v. | CLASS ACTION |
| ROCK OF AGES CORPORATION, SWENSON GRANITE COMPANY, LLC, KURT M. SWENSON, JAMES L. FOX, RICHARD C. KIMBALL, DONALD LABONTE, LAURA A. PLUDE, PAMELA G. SHEIFFER, CHARLES M. WAITE, and FREDERICK E. WEBSTER JR., | |
| Defendants. | |

| | |
|---|---|
| THE VLADIMIR GUSINSKY REVOCABLE TRUST, on behalf of itself, and all others similarly situated, | |
| Plaintiff, | Case No. 5:10-cv-00262-CR |
| v. | |
| ROCK OF AGES CORPORATION, JAMES L. FOX, RICHARD C. KIMBALL, DONALD LABONTE, PAMELA G. SHEIFFER, KURT M. SWENSON, FREDERICK E. WEBSTER JR., SWENSON GRANITE COMPANY, LLC, and GRANITE ACQUISITION, LLC, | |
| Defendants. | |

**PLAINTIFF TODD SEMON'S MEMORANDUM IN RESPONSE TO DEFENDANTS' MOTION TO CONSOLIDATE AND TO STAY PROCEEDINGS, AND IN SUPPORT OF CROSS-MOTION TO BE APPOINTED LEAD PLAINTIFFS AND APPROVAL OF SELECTION OF WOLF POPPER LLP AS LEAD COUNSEL AND TARRANT, GILLIES, MERRIMAN & RICHARDSON AS LIAISON COUNSEL**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ ii

I.      PRELIMINARY STATEMENT ............................................................................................1

II.     BACKGROUND AND PROCEDURAL STATUS.............................................................2

III.    RELEVANT FACTS CONCERNING THE VARIOUS PLAINTIFFS ............................4

VI.     ARGUMENT ........................................................................................................................5

        A.      A Threshold Jurisdictional Issue To Consolidation Facing The
                Gusinsky Action.........................................................................................................5

        B.      If The Court Has Subject Matter Jurisdiction Over The Gusinsky Action, It
                Should Be Consolidated With The Semon Action .................................................6

        C.      The Court Should Appoint Wolf Popper as Lead Counsel and Tarrrant, Gillies
                As Liaison Counsel ....................................................................................................6

                1.      The Overwhelmingly Greater ROAC Stockholdings And Financial
                        Interest Of Semon And Meister Warrant Their Appointment As Lead
                        Plaintiffs And Their Counsel As Lead And Liaison Counsel.....................8

                2.      The Quality Of The Pleadings In The Semon Action Is Superior To The
                        Quality Of The Pleadings In The Gusinsky Action ....................................9

                3.      Other Factors Also Favor the Appointment of Wolf Popper as Lead
                        Counsel ......................................................................................................10

                4.      Wolf Popper Is Highly Experienced In Securities Class Action
                        Litigation....................................................................................................14

        D.      Defendants' Request For A Stay Should Be Denied ...........................................14

V.      CONCLUSION....................................................................................................................15

# TABLE OF AUTHORITIES

## CASES

*Allen v. News Corp.*,
    2005 Del. Ch. LEXIS 27 (Del. Ch. Feb. 3, 2005).................................................7

*Dutiel v. Tween Brands, Inc.*,
    2009 Del. Ch. LEXIS 171 (Del. Ch. Oct. 2, 2009),
    *reargument denied*, 2009 Del. Ch. LEXIS 189 (Del. Ch. Oct. 28, 2009).......................7, 8

*Hirt v. U.S. Timberlands Serv. Co.*,
    2002 Del. Ch. LEXIS 89 (Del. Ch. July 3, 2002).................................................7

*Hunt Construction Group, Inc. v. Brennan Beer Gorman / Architects, LLP*,
    2009 U.S. Dist. LEXIS 68253 (D. Vt. Aug. 5, 2009).........................................14

*Landis v. North Am. Co.*,
    299 U.S. 248 (1936).........................................................................6

*TCW Tech. Ltd. P'ship v. Intermedia Commc'ns, Inc.*,
    2000 Del. Ch. LEXIS 147 (Del. Ch. Oct. 17, 2000)...........................................6

## STATUTES AND RULES

28 U.S.C. §1332(a) .....................................................................................2, 5

28 U.S.C. §1332(c) .....................................................................................2, 5

28 U.S.C. §1332(d) ........................................................................................5

Fed. R. Civ. P. 12(h)(3)....................................................................................5

Fed. R. Civ. P. 42(a) .......................................................................................6

Local Rule 42(a) ...........................................................................................6

Private Securities Litigation Reform Act of 1995 ........................................................7

    15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb) ...............................................................7

    15 U.S.C. § 78u-4(a)(3)(B)(vi) .....................................................................13

## I.   PRELIMINARY STATEMENT

Plaintiff Todd Semon ("Semon"), a beneficial owner of approximately 11,700 shares of Rock of Ages Corporation ("ROAC") common stock, together with Jerome Meister ("Meister"), a beneficial owner of 65,000 shares of ROAC common stock and the proposed Co-Plaintiff with Semon in the Proposed Verified Amended Class Action Complaint,[1] respectfully submit this memorandum: (a) in response to the motion filed November 23, 2010, by three of the defendants, James L. Fox, Pamela G. Sheiffer and Frederick E. Webster, Jr. (the "Committee Defendants"), to consolidate and stay proceedings,[2] and (b) in support of the cross-motion to appoint Plaintiffs Semon and Meister as Lead Plaintiffs and to approve their selection of Wolf Popper LLP ("Wolf Popper") as Lead Counsel and Tarrant, Gillies, Merriman & Richardson ("Tarrant, Gillies") as Liaison Counsel for Plaintiffs should this action, *Semon v. Rock of Ages Corp., et al.*, Case No. 5:10cv00143 – CR ("Semon Action") ultimately become consolidated with the newly filed *The Vladimir Gusinsky Revocable Trust v. Rock of Ages Corp.*, Case No. 5:10-cv-00262-CR ("Gusinsky Action").

The Committee Defendants seek to consolidate the Semon Action, which has been pending before this Court for almost six months (and for a month even prior thereto in state court before it was removed to this Court), with the newly filed Gusinsky Action, and then to stay all proceedings pending the filing of a new, unnecessary consolidated complaint.

If the Court determines that the Gusinsky Action satisfies the jurisdictional threshold for diversity jurisdiction, 28 U.S.C. §1332(a)(c), and thus that the Court has subject matter jurisdiction

---

[1] *See* Dkt. No. 53 (Attachment #1), filed with the Court on November 22, 2010 ("Amended Complaint" or "Am. Comp.").

[2] Two of the other defendants, Rock of Ages Corporation and Laura A. Plude, subsequently filed a Joinder to the Committee Defendants' Motion to Consolidate and Stay Proceedings on November 29, 2010; and Defendants Richard C. Kimball, Donald M. Labonte, Kurt M. Swenson, Charles M. Waite. filed a Joinder to the Motion on December 3, 2010. *See* Dkt. Nos. 56 and 57.

over the Gusinsky Action such that there is a second case to be consolidated with, then Plaintiff

Semon (and Proposed Co-Plaintiff Meister) concur that the Gusinsky Action should be consolidated

into the Semon Action. However, in such event, the Court should (i) appoint Semon and Meister as

lead plaintiffs and approve their selection of Semon's (and Meister's) counsel as Lead and Liaison

Counsel for Plaintiffs, and (ii) grant the motion to amend in the Semon Action and designate the

Amended Complaint to be the operative complaint in the consolidated proceeding under the lower

numbered Semon Action.[3]  Any stay of the litigation is unnecessary and would unduly delay and

prejudice the prosecution of Plaintiffs' case.

## II.      BACKGROUND AND PROCEDURAL STATUS

This litigation arises out of an unlawful scheme and plan to enable a group headed by

Defendant Kurt M. Swenson ("Swenson"), ROAC's Chairman, his brother, Kevin Swenson, and

Robert Pope ("Pope"),[4] to acquire ROAC for grossly inadequate consideration and in breach of the

individual defendants' fiduciary duties. The scheme began at least as early as September 19, 2009,

when ROAC announced its reincorporation from Delaware to Vermont, which had the effect of

making it easier for the Swenson Granite Group to acquire the remaining shares of ROAC that it did

not already own or control.[5]

---

[3] The proposed consolidation order submitted by the Committee Defendants is deficient in numerous respects, including the lack of appointment of any leadership structure to prosecute the litigation and the delays it seeks in the prosecution of this suit for the filing of an unnecessary consolidated complaint. Semon and Meister respectfully submit the accompanying proposed order ("Plaintiffs' Proposed Consolidation Order"), which rectifies the defects in Defendants' proposed order, and request that the Court enter Plaintiffs' Proposed Consolidation Order if the Court determines it has subject matter jurisdiction over the later, second-filed Gusinsky Action.

[4] Collectively these individuals own approximately 31% of all outstanding shares of common stock of ROAC, and control approximately 71% of the voting power of all outstanding ROAC shares.

[5] The Swenson Granite Group consists of Swenson, Kevin Swenson, Pope, Peter Friberg (a ROAC Vice President), and certain other members of Swenson Granite Company, LLC who are also shareholders of ROAC, who have entered into agreements to vote all of the shares in favor of approval

(footnote cont'd on next page)

On May 7, 2010, ROAC announced that its board of directors (the "Board") had received an unsolicited proposal from Swenson Granite, led by Swenson, Kevin Swenson, and Pope, to purchase all of the outstanding shares of the Company for $4.38 per share in cash. This announcement had the effect of capping the market price for the Company's stock so that it would not rise above this initial offer price to its true market level. In fact, ROAC's stock price did not trade above this initial offer price prior to the announcement of the Proposed Transaction five months later, notwithstanding positive earnings releases by ROAC on May 11 and August 10, 2010.

Following an analysis of this proposal, Plaintiff Semon filed a class action complaint in Vermont Superior Court, Washington County on May 19, 2010, asserting breach of fiduciary duty claims under Vermont state law based on defendants' wrongful conduct. That complaint alleged that the proposed transaction was the product of unfair dealing, and the price was unconscionable and unfair and so grossly inadequate as to constitute a gross breach of trust by the management defendants participating in the proposed transaction against the Company's public stockholders. Defendants removed the action to this Court and subsequently sought to dismiss the action, primarily on the grounds that there was not yet a formal proposed transaction.[6]

On October 18, 2010, ROAC announced that it had entered into a definitive merger agreement with Swenson Granite Group (the "Merger Agreement") whereby it will acquire 100% ownership of ROAC for $5.25 per share in cash (i.e., the Proposed Transaction). The Proposed Transaction is unfair to the public shareholders of ROAC in both the process at which it was arrived at and the price

---

of the merger agreement whereby Swenson Granite Company, LLC, and its wholly owned subsidiary, Granite Acquisition, LLC (together, "Swenson Granite") will acquire 100% ownership of ROAC for $5.25 per share in cash (the "Proposed Transaction"). Members of the Swenson Granite Group beneficially own, in the aggregate, approximately 81% of the total voting power of all outstanding shares of ROAC's common stock.

[6] Not only was Defendants' argument wrong, it is also now moot since the Swenson Granite Group has since made such a formal proposal.

it provides to the minority shareholders. As detailed in the proposed Amended Complaint on file with the Court, the members of the Board failed to fulfill their fiduciary duties to maximize value for ROAC's public shareholders, and also failed to disclose material information that the public shareholders need in order to make informed decisions as to whether to vote their shares in favor of the Proposed Transaction or not.

More than five months after Plaintiff Semon initially commenced his action in Vermont state court (which was removed to this Court), plaintiff Gusinsky filed a related action. Defendants seek to consolidate and to use the filing of the second case to stay the cases pending the filing of a consolidated complaint. Consolidation may be appropriate once the threshold issue of subject matter jurisdiction of the second case is resolved, but any stay is unwarranted.

## III.    RELEVANT FACTS CONCERNING THE VARIOUS PLAINTIFFS

Plaintiffs Semon and Meister are long time significant shareholders of ROAC. Plaintiff Semon beneficially owns approximately 11,700 shares and Meister beneficially owns 65,000 shares. Plaintiff Semon has been actively litigating this case for 6 months and Meister has joined with him in the Verified Amended Class Action Complaint ("Am. Comp.") to prosecute the case going forward. Semon investigated the underlying facts and claims (including a comprehensive review of public documents, including filings with the Securities and Exchange Commission, press releases, analyst reports, media reports, internet searches, etc.). He consulted with a well-respected financial expert who analyzed the value of ROAC and whose financial analysis was provided to the Special Committee of the Board, demonstrating that the initially announced offer price substantially undervalued ROAC. Semon and Meister's 43-page Amended Complaint, is extensive and sets forth the scope of Defendants' scheme in far more detail, providing more instances of Defendants' wrongdoing, than the complaint filed by Gusinsky. Discovery was served in the Semon Action and a motion to expedite discovery was served in the Semon Action (as well as in the Gusinsky Action).

Plaintiff Gusinsky, on the other hand, does not disclose the number of shares of ROAC that it owns in its complaint, but Gusinsky's counsel has informed Wolf Popper that Gusinsky owns fewer than 200 shares. Gusinsky also is currently a plaintiff in or is presently prosecuting at least 8 other shareholder actions (either directly, or indirectly through his Revocable Trust (as here) or through a Living Trust). (*See* pp. 11-13, *infra*.)

## IV.    ARGUMENT

### A.    A Threshold Jurisdictional Issue To Consolidation Facing The Gusinsky Action

The Gusinsky Action asserts jurisdiction under 28 U.S.C. §1332(a), (c), and (d). Section 1332(a)(c) provides diversity jurisdiction when the amount in controversy exceeds $75,000.[7] There is no disclosure in the Gusinsky complaint of the number of shares of ROAC stock held by Gusinsky.[8] On the face of the Gusinsky complaint, therefore, it is unclear whether this Court has subject matter jurisdiction over the Gusinsky Action.[9] However, if the Court is satisfied that there is jurisdiction, Plaintiffs in the Semon Action agree that the Gusinsky Action should be consolidated with the Semon Action, the lower-numbered action, as set forth below.[10]

---

[7] Although the Gusinsky complaint says classwide damages exceed $5 million, tracking the language of the Class Action Fairness Act ("CAFA"), 28 U.S.C. §1332(d), CAFA is inapplicable to the claims asserted in this litigation, as Defendants have conceded. *See* Defendants' Opposition to Motion to Remand (Semon Action, Dkt. No. 31), p. 14, n.8. Gusinsky's reference to a $5 million classwide figure is, therefore, irrelevant.

[8] As indicated above, Gusinsky's counsel has informed Semon's counsel that Gusinsky owns fewer than 200 shares of ROAC stock.

[9] The Court may on its own determine subject matter jurisdiction. *See generally* Fed. R. Civ. P. 12(h)(3).

[10] In the event the Court determines to consolidate the actions, Plaintiffs in the Semon Action have submitted a Proposed Order governing the motions.

169543

**B.**    **If The Court Has Subject Matter Jurisdiction Over The Gusinsky Action, It Should Be Consolidated With The Semon Action**

The Gusinsky Action raises questions of law and fact that are common to the Amended Complaint in the Semon Action and, therefore, in the interests of judicial economy, the Gusinsky Action should be consolidated into the Semon Action after the Court determines that the Gusinsky Action is properly before it. Pursuant to the Local Rules of this Court, the Semon Action would be designated the "Lead Case." L.R. 42(a)(3).[11]

**C.**    **The Court Should Appoint Wolf Popper As Lead Counsel And Tarrant, Gillies As Liaison Counsel**

Plaintiffs in the Semon Action submit that all relevant, objective factors warrant the selection of Wolf Popper as Lead Counsel (and Tarrant, Gillies as Liaison Counsel) for Plaintiffs and the Class represented in the actions should they be consolidated. While there is little Vermont law which addresses the subject of the appointment of lead counsel under the circumstances present at bar, authority in other jurisdictions, in particular, Delaware law and federal law, provides some insight and guidance which is instructive.[12] For example, in *TCW Tech. Ltd. P'ship v. Intermedia Commc'ns, Inc.*, 2000 Del. Ch. LEXIS 147, at *10 (Del. Ch. Oct. 17, 2000), listed factors to be considered when making a determination on a contested lead counsel application. (Copies of unreported opinions are

---

[11] Pursuant to Fed. R. Civ. P. Rule 42(a) and Local Rule 42(a), consolidation of the two actions will serve the interests of justice as they both involve common questions of law and fact. Consolidation of the actions will also promote conservation of judicial resources, as well as the resources of the parties. "If actions before the Court involve a common question of law or fact the court may:. . . (2) consolidate the actions." Fed. R. Civ. P. 42(a).

Rule 42(a) also permits the Court to "issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a)(3). Indeed, the power to order the consolidation and merger of cases before trial falls within the broad inherent authority of every court "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel and for litigants." *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936). In this case, relevant circumstances militate in favor of consolidating the Gusinsky Action into the Semon Action. These actions arise from the same core of operative facts – the facts relating to the Proposed Transaction.

[12] ROAC was incorporated in Delaware prior to its reincorporation in Vermont as part of the scheme alleged in the Semon Action.

attached to the accompanying Declaration of Chet B. Waldman ("Waldman Decl.")).  These factors,

repeated in *Hirt v. U.S. Timberlands Serv. Co.*, 2002 Del. Ch. LEXIS 89, at *5 (Del. Ch. July 3, 2002),

included:

•       The relative economic stakes of the competing litigants in the outcome of the lawsuit (to be

accorded "great weight");

•       The "quality of the pleading that appears best able to represent the interests of the shareholder

class and derivative plaintiffs;"

•       The willingness and ability of all the contestants to litigate vigorously on behalf of an entire

class of shareholders;

•       The absence of any conflict between larger, often institutional, stockholders and smaller

stockholders;

•       The enthusiasm or vigor with which the various contestants have prosecuted the lawsuit; and

•       The competence of counsel and their access to the resources necessary to prosecute the claims

at issue.

*See Allen v. News Corp.*, 2005 Del. Ch. LEXIS 27 (Del. Ch. Feb. 3, 2005) (applying *Hirt* factors).

        Similarly, although the claims at issue are not brought under the Private Securities Litigation

Reform Act of 1995 ("PSLRA"), the criteria the PSLRA employs in appointing lead counsel in federal

securities cases is instructive.  That is, under the PSLRA, the lead plaintiff to be appointed by the

court is the plaintiff with the largest financial interest in the litigation.  *Cf.* 15 U.S.C. § 78u-

4(a)(3)(B)(iii)(I)(bb).

        Thus, Delaware precedent holds that while the Court should consider several factors when

deciding to appoint lead counsel for plaintiffs, the size of the respective parties' economic interest in

the litigation is "fundamental."  *Dutiel v. Tween Brands, Inc.*, 2009 Del. Ch. LEXIS 171, at *6 (Del.

Ch. Oct. 2, 2009), *reargument denied*, 2009 Del. Ch. LEXIS 189, at *10 (Del. Ch. Oct. 28, 2009) (a

1200% greater economic interest in the case warranted the appointment of the counsel representing

such larger client as lead counsel; "most importantly, the motivating force behind the rulings in *TCW*

*Tech.*, *Hirt*, and *Wiehl* [*v. Eons Labs.*, 2005 Del. Ch. LEXIS 40 (Del. Ch. Mar. 22, 2005)] is the very

force this Court intended its Letter Opinion to reference, and which this Court believes to be an issue

of fundamental import:  the significance of an individual's stake in the litigation and the resulting

incentive the individual has to participate in the litigation and monitor his or her counsel.").[13]

> 1.    **The Overwhelmingly Greater ROAC Stockholdings And Financial Interest Of Semon And Meister Warrant Their Appointment As Lead Plaintiffs And Their Counsel As Lead And Liaison Counsel**

It cannot be disputed that Plaintiff Semon, who beneficially owns approximately 11,700 shares

of ROAC common stock, and proposed Co-Plaintiff Meister, who beneficially owns 65,000 shares of

common stock, both individually and collectively, have a far greater economic stake in the litigation

than does Gusinsky.  Indeed, Gusinsky chose not to publicly disclose its holdings, but its counsel has

informed Wolf Popper that Gusinsky owns fewer than 200 ROAC shares.

Semon and Meister indisputably have the largest financial interest in the litigation.  They are

the ones with the most incentive to achieve the best results for the class, and will be motivated to

closely supervise their counsel to ensure that this litigation is not "attorney-driven", and insure that the

action is vigorously prosecuted.  Messrs. Semon's and Meister's economic interests are to be accorded

"great weight."  They wish to have their counsel appointed as Lead Counsel and Liaison Counsel.

Plaintiff Gusinsky has no qualifications that outweigh those of Semon and/or Meister.  Plaintiff

Gusinsky brings nothing unique to this litigation which would warrant the appointment of his counsel

as a lead counsel or liaison counsel.

---

[13] Here, Semon has a more than 5,500% greater economic interest than Gusinsky; and Meister has a 32,500% greater economic interest than Gusinsky.  Coincidentally, the plaintiff in *Dutiel* whose motion for the appointment as lead counsel was denied was represented by Rigrodsky & Long, counsel for Gusinsky here.

2.      **The Quality Of The Pleadings In The Semon Action Is Superior To The Quality Of The Pleadings In The Gusinsky Action**

The quality of the pleadings in the Semon Action is superior to the quality of the pleadings in the Gusinsky Action. On November 22, 2010, Plaintiff Semon filed a motion for permission to file the Amended Complaint. *See* Dkt. No. 53. This Amended Complaint is far more comprehensive and superior to any pleading in the Gusinsky Action. In sum, there is nothing substantive in the Gusinsky Action complaint that is not in the Semon Amended Complaint, but there is much more detail in the Semon Amended Complaint than in the Gusinsky Action.

The Amended Complaint describes at length the background of the scheme to enable the Swenson Granite Group to acquire the public shares of ROAC.[14] The Amended Complaint also

---

[14] Contrary to aspersions cast in the complaint filed by Gusinsky claiming that the initial Semon complaint was "premature," as Semon's counsel has argued before the Court, such a contention is belied by the facts. As detailed in the Amended Complaint, Plaintiff Semon alleges that Defendants' scheme to acquire ROAC began at least as early as September 19, 2009, when ROAC announced its reincorporation from Delaware to Vermont by merging ROAC into its wholly-owned Vermont subsidiary. (*E.g.*, Am. Comp. ¶¶3, 32-35, 81.) According to the Proxy Statement filed by ROAC at that time, this reincorporation had the effect of making it easier for the Swenson Granite Group to acquire the remaining shares of ROAC that it did not own. The subsequent steps implementing the scheme are described in detail in the Amended Complaint. In May 2010, Defendant Swenson, a controlling shareholder, sent the initial proposal to ROAC to acquire the remaining public shares at a price of $4.38 per share, a price that was unconscionable and unfair and so grossly inadequate as to constitute a gross breach of trust. As part of the announcement, ROAC's Board told shareholders that if Swenson was unable to structure the transaction in such a way so as to "step up" ROAC's assets to fair market value, then even the proposed $4.38 price could be reduced. (Am. Comp. ¶39.) It was also clear that Swenson and his group had no intention of selling their shares in ROAC, quelling any potential white knight from stepping forward. (E.g., Am. Comp. ¶¶65, 99.) These tactics had the effect of "capping" the market price so as to minimize any increase in the market price which would result from upcoming favorable financial results. (Am. Comp. ¶¶42, 53, 55.) Indeed, the tactics were successful because only a few days later ROAC announced favorable financial results, greatly narrowing a typical first quarter loss and increasing quarterly revenue 26%, manufacturing revenue 38%, quarterly revenue 16%, and announcing "substantially improved performance. (Am. Comp. ¶¶44-47.) Shortly thereafter it was reported that ROAC obtained a new contract with the Army Corp of Engineers. (Am. Comp. ¶¶48.) Three months later, ROAC reported a 9% increase in second quarter net income, a 26% increase in divisional operating income, a 7% increase in manufacturing revenue, and a 41% increase in operating income. (Am. Comp. ¶¶52-53.) Despite these marked improvements in ROAC's financial condition, its stock price did not respond and did not trade above the $4.38 initial offer price. (Am. Comp. ¶53.)

(footnote cont'd on next page)

details the flawed process by which the Special Committee supposedly "shopped" ROAC, the

financial conflicts of the individual members of ROAC's Board, the conflicts of interest of the

investment banking firm which acted as the financial advisor to the Special Committee, the potential

conflict of interest for the attorneys who performed personal legal work for the Swensons and also

representing ROAC, and the several terms of the Merger Agreement which favored the Swenson

Granite Group.  The Amended Complaint also describes why the offer price is unfair and how the

Defendants' disclosures in the preliminary proxy materials recommending the Proposed Transaction

are materially inadequate.   In sum, the allegations in the Amended Complaint are far more

comprehensive and provide a far more complete picture of Defendants' wrongdoing than the

allegations in the Gusinsky Action.

This Court should deem the Amended Complaint to be the operative complaint to govern any

consolidated proceeding.  As such, there would also be no need for any stay of any proceedings and

Defendants' motion for a stay should accordingly be denied.

### 3.   Other Factors Also Favor The Appointment Of Wolf Popper As Lead Counsel

Beyond the most fundamental criterion of the overwhelming financial interests of the Plaintiffs

in the Semon Action and the superiority of the pleadings in the Semon Action, the other objective

factors also warrant the appointment of counsel in the Semon Action, Wolf Popper as Lead Counsel,

and Tarrant, Gillies, as Liaison Counsel.

The willingness and ability of both the Plaintiffs and the counsel in the Semon Action to

litigate vigorously on behalf of all the shareholders and the enthusiasm with which they have done so

---

On October 10, 2010, ROAC announced the definitive buyout deal, now at $5.25 per share,
touting the premium such offer provided to shareholders.  However, had the May 7 announcement not
capped the market price of ROAC's shares, in light of the positive earnings releases on May 11 and
August 10, it is almost assured that ROAC's shares would have traded higher than the Initial Offer
price and that the premiums touted in the October 18, 2010 release would not look nearly as robust.

cannot be disputed.  Plaintiff Semon has been prosecuting this litigation for over six months and his counsel has appeared before this Court in person and telephonically.  Semon has retained a financial expert who has analyzed ROAC.  The analysis demonstrated that the original offer was totally inadequate and was provided to the Special Committee of ROAC that was considering the transaction. Thereafter, after the Special Committee's advisors admitted reviewing said analysis, the price was improved.  Plaintiff Semon has served discovery and has moved to accelerate discovery.

Further, there is no conflict of interest between the Plaintiffs in the Semon Action and that of the Gusinsky Action.

However, plaintiff Gusinsky is unlikely to be able to pursue the action as vigorously as the Plaintiffs in the Semon Action.  In marked contrast to both Plaintiffs Semon and Meister in the Semon Action, the plaintiff in the Gusinsky Action, based on publicly available information, is a plaintiff in, or has recently filed, at least 8 other stockholder class or derivative actions.  Neither Plaintiff Semon nor Meister is presently involved in any other stockholder case.

For example, according to filings made with the United States Securities and Exchange Commission and available on its official website or filed on PACER (*see* Waldman Decl., Exhibits H through O), Vladimir Gusinsky, through the vehicles of a Revocable Trust (as here) and a Living Trust, as well as individually, has recently filed:

(a)      *Vladimir Gusinsky Revocable Trust v. ActivIdentity Corporation, et al.*, Case No. RG10541071, was filed in October 2010, on behalf of ActivIdentity stockholders in the Superior Court of Alameda County, California, generally alleging that the company's board members breached their fiduciary duties in connection with approving a merger.[15]

---

[15] *See* Activecard Corp. FORM DEFM14A, Filed: November 12, 2010, pp. 50-51; http://www.sec.gov/Archives/edgar/data/1183941/000104746910009609/a2200959zdefm14a.htm .

(b)      *Gusinsky Revocable Trust v. Cogent, Inc.*, BC444852, was filed September 2, 2010, on behalf of shareholders of Cogent, Inc. in the Superior Court of Los Angeles County, California, generally alleging that the company's board breached their fiduciary duties to Cogent by seeking to sell Cogent through an allegedly unfair process and for an unfair price and on unfair terms.[16]  This action has been stayed pending a status conference to be held later in December.

(c)      *Vladimir Gusinsky Revocable Trust v. Nu Horizons Electronics Corp.*, was filed on September 22, 2010, in New York State Supreme Court, Suffolk County, alleging defendants breached their fiduciary duties in connection with the acquisition of Nu Horizons Electronics Corp. Counsel for other plaintiffs were appointed lead counsel for the consolidated actions.[17]

(d)      *Vladimir Gusinsky Revocable Trust v. Woertz, et al.*, 1:10-cv-00603-GMS (D. Del.), was filed on July 14, 2010, as a shareholder derivative action on behalf of Archers-Daniel-Midland Company, challenging certain disclosures and executive compensation.

(e)      *The Vladmir Gusinsky Living Trust v. Muller, et al.*, No. 2010CV184331, was filed on April 15, 2010, in Fulton County, Georgia, against Mirant, RRI Energy and the members of the Mirant board of directors on behalf of holders of Mirant stock, alleging that defendants breached their fiduciary duties to Mirant's stockholders in connection with a merger.  An order was entered deeming a different complaint the operative complaint in consolidated proceedings and the consolidated cases entered into a potential settlement.[18]

---

[16] *See* Cogent, Inc. FORM DEFM14A, Filed: November 4, 2010, pp. 50-51;
http://www.sec.gov/Archives/edgar/data/1289434/000119312510247801/ddefm14a.htm.

[17] *See* Nu Horizons Electronics Corp., FORM DEFM14A, Filed: October 29, 2010, pp. 48-49;
http://www.sec.gov/Archives/edgar/data/718074/000104746910009010/a2200662zdefm14a.htm.

[18] *See* Mirant Corp., FORM 10-Q, filed November 5, 2010, p.42;
http://www.sec.gov/Archives/edgar/data/1010775/000119312510248962/d10q.htm.

(f)      *The Vladimir Gusinsky Living Trust Dated 8/25/1993 v. Sybase Incorporated, et al.*, Case No. RG10-515575, was filed on May 17, 2010, in the Superior Court of the State of California for the County of Alameda, in which Gusinsky asserts that defendants breached their fiduciary duties in connection with the sale of Sybase.[19]

(g)      *Vladimir Gusinsky Rev. Trust v. Silicon Storage Technology Inc, et al.*, No. 109CV157611, was filed on November 19, 2009, in the Superior Court of the State of California for the County of Santa Clara, in which the Trust alleges that defendants breached their fiduciary duties to stockholders in connection with the merger of the company.[20]

(h)      *Gusinsky v. Irani,* was filed on July 29, 2010, in the Superior Court of the State of California for the County of Los Angeles, as a shareholder derivative action on behalf of Occidental Petroleum Corp., challenging certain executive compensation.[21]

While participation in a limited number of other stockholder class actions perhaps may not, *ipso facto*, preclude a shareholder from filing another case, it is relevant to a consideration of whether such a plaintiff should be appointed a lead plaintiff or its counsel a lead or co-lead counsel. *Cf.* 15 U.S.C. § 78u-4(a)(3)(B)(vi) (PSLRA provides that "a person may be a lead plaintiff . . . in no more than 5 securities class actions . . . during any 3-year period."). Gusinsky's filing of, and involvement in, so many other shareholder litigations can only serve as a distraction and detract from any ability to fairly and adequately prosecute this litigation. In contrast, neither Semon nor Meister suffers from any such infirmities.

---

[19] *See* Sybase Inc. FORM SC 14D9, Filed: May 26, 2010, p. 35 and Exh. (a)(5)(B); http://www.sec.gov/Archives/edgar/data/768262/000119312510129405/dsc14d9.htm, and http://www.sec.gov/Archives/edgar/data/768262/000119312510129405/dex99a5b.htm.

[20] *See* Silicon Storage Technology Inc., FORM DEFM14A, Filed: March 01, 2010, p.48; http://www.sec.gov/Archives/edgar/data/855906/000119312510044942/ddefm14a.htm.

[21] *See* Occidental Petroleum Corp., Form 10-Q, Filed: November 04, 2010, p.30; http://www.sec.gov/Archives/edgar/data/797468/000079746810000115/form10q-20103q.htm.

### 4.     Wolf Popper Is Highly Experienced In Securities Class Action Litigation

Wolf Popper has several decades of experience representing shareholders in complex and class action litigation and has recovered billions of dollars for its clients. See, e.g., Wolf Popper firm resume, Waldman Decl. Exh. A; *see also* www.wolfpopper.com. Wolf Popper has successfully served as lead or co-lead counsel for investors throughout the United States. Wolf Popper, particularly together with Tarrant Gillies as Liaison Counsel, will provide strong and appropriate representation for the investors and will devote the resources necessary to vigorously prosecute this litigation. A copy of the firm resume for Tarrant, Gillies is attached as Exhibit B to the Waldman Decl.

### D.     Defendants' Request For A Stay Should Be Denied

Defendants' request for a stay of the proceedings pending the filing of a consolidated complaint should be summarily denied. Defendants are using the excuse of the filing of the second action as a tactical maneuver to circumvent the stringent requirements which must be met to stay a proceeding. *See, e.g., Hunt Constr. Group, Inc. v. Brennan Beer Gorman / Architects, LLP*, 2009 U.S. Dist. LEXIS 68253, at *3-4 (D. Vt. Aug. 5, 2009) (defendants failed to meet strong burden of establishing clear hardship in seeking a stay over plaintiff's objections). Nothing in Defendants' motion warrants the grant of a stay, especially given the urgency in which this litigation must proceed to prevent a closing of the Proposed Transaction.

Furthermore, the motion for permission to file the Amended Complaint in the Semon Action is presently before the Court. *See* Dkt. No 53, attachment #1. That motion should be granted and the Court has the inherent power to, and should, designate that Amended Complaint to be the operative complaint in any consolidated litigation. Thus, Defendants' using the supposed need for a consolidated complaint as the basis for a stay should be seen for what it is, nothing more than a ploy for delay. There is no need for any stay.

169543

- 14 -

## V.    CONCLUSION

Careful consideration of the appropriate factors relevant to the appointment of lead plaintiffs and lead counsel militates in favor of appointing Messrs. Semon and Meister as Lead Plaintiffs, and their counsel, Wolf Popper, as Lead Counsel for all the Plaintiffs and Tarrant, Gillies as Liaison Counsel.  For the reasons set forth above, Plaintiff Semon (and Co-Plaintiff Meister) respectfully requests that the Court:  (a) initially determine if it has subject matter jurisdiction of the Gusinsky Action and only if such jurisdiction exists then consolidate the Gusinsky action into the Semon Action, (b) appoint Plaintiffs Semon and Meister as Lead Plaintiffs and their counsel, Wolf Popper, as Lead Counsel and Tarrant, Gillies as Liaison Counsel, (c) designate the Semon/Meister Amended Complaint to be the operative complaint, and (d) deny Defendants' request for a stay of all proceedings.

DATED:  December 6, 2010

Respectfully submitted,

_Chet B. Wa_

Chet B. Waldman (admitted *pro hac vice*)
WOLF POPPER LLP
845 Third Avenue
New York, New York 10022
(212) 759-4600

_s/ Daniel P. Richardson_

Daniel P. Richardson
Gerald Tarrant
TARRANT,    GILLIES,    MERRIMAN    &
RICHARDSON
44 East State Street
P.O. Box 1440
Montpelier, Vermont 05601-1440
(T): (802) 223-1112
(F): (802) 223-6225

*Attorneys for Plaintiff Semon and Proposed Plaintiff Meister*

169543

- 15 -